UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RAJESH BADAM.,<br><br>    *Plaintiff*,<br><br>v.<br><br>TODD M. LYONS, Acting Director, U.S. Immigration and Customs Enforcement,<br><br>    *Defendant.* | Civil Action No. 1:25-cv-1098 (CJN) |
| K. ALI, et al.,<br><br>    *Plaintiffs*,<br><br>v.<br><br>DEPARTMENT OF HOMELAND SECURITY, et al.,<br><br>    *Defendants.* | Civil Action No. 1:25-cv-1151 (CJN) |
| HARUN OZTURK, et al.,<br><br>    *Plaintiffs*,<br><br>v.<br><br>KRISTI NOEM, Secretary of Homeland Security,<br><br>    *Defendant.* | Civil Action No. 1:25-cv-1203 (CJN) |

1

**ORDER**

Plaintiffs in these cases are (or were) F-1 visa holders who sought preliminary injunctive relief after the government terminated their records in the Student and Exchange Visitor Information System (SEVIS), apparently as a result of criminal records checks indicating that they had criminal histories. *See Badam*, ECF No. 7-1 (Watson Decl.) ¶¶ 7–9; *Ali*, ECF No. 9-1 (Watson Decl.) ¶¶ 10, 12, 16, 19, 22, 25, 28, 31, 34, 37, 40, 43, 45, 50, 52, 55, 59, 61, 64, 67; *Ozturk*, ECF No. 9-1 (Watson Decl.) ¶¶ 9, 11, 15, 17, 20, 24, 27, 29. Plaintiffs alleged that the termination of their SEVIS records inflicted irreparable harm on them because it effected a termination of their F-1 status, thereby preventing them from working or attending school in the United States and exposing them to the possibility of deportation. *See Badam*, ECF No. 2 (Mot.) at 16; *Ali*, ECF No. 2 (Mot.) at 12–13; *Ozturk*, ECF No. 3 (Mot.) at 7–8. They accordingly asked the Court to "enjoin[] . . . ICE's termination of [their] SEVIS record[s] and F-1 status during the course of this litigation." *Badam*, ECF No. 1 (Compl.) ¶ 57.

While plaintiffs' motions were pending, however, the government filed a notice in each of these cases representing that:

> ICE is developing a policy that will provide a framework for SEVIS record terminations. Until such a policy is issued, the SEVIS records for [plaintiffs] (and other similarly situated plaintiffs) will remain Active or shall be re-activated if not currently active and ICE will not modify the record solely based on the [National Crime Information Center (NCIC)] finding that resulted in the recent SEVIS record termination.

*E.g.*, *Badam*, ECF No. 13 at 2. In light of that change, the Court ordered plaintiffs to advise whether their SEVIS records had been restored, and all plaintiffs reported that they had. *See Badam*, ECF No. 17; *Ali*, ECF No. 14; *Ozturk*, ECF No. 16. The following day, the government filed on the docket a copy of its promised "new policy" regarding termination of SEVIS records,

2

which did not list criminal records checks as a valid basis for terminating a record in SEVIS. *See Badam*, ECF No. 16-1 at 1.

To obtain a temporary restraining order or preliminary injunction, a plaintiff must make a "clear showing that four factors, taken together, warrant relief: likely success on the merits, likely irreparable harm in the absence of preliminary relief, a balance of the equities in [his or her] favor, and accord with the public interest." *League of Women Voters of the U.S. v. Newby*, 838 F.3d 1, 6 (D.C. Cir. 2016). But the "basis of injunctive relief in the federal courts has always been irreparable harm," *Sampson v. Murray*, 415 U.S. 61, 88 (1974), and "[a] movant's failure to show any irreparable harm is . . . grounds for refusing to issue a [TRO or] preliminary injunction, even if the other three factors entering the calculus merit such relief." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006). The Court concludes that, as things now stand, plaintiffs have not demonstrated that they will suffer irreparable harm absent a TRO or preliminary injunction. It will therefore deny plaintiffs' motions on that basis.

The reactivation of plaintiffs' SEVIS records—which is the primary relief plaintiffs sought in their motions—means that they are neither presently nor imminently subject to any of the harms they pointed to in their briefs. They may attend class and go to work as before, and even assuming that terminating a record in SEVIS necessarily equates to terminating F-1 status—a point that the government contests—plaintiffs make no suggestion that restoring a record would not correspondingly restore that status. Nor do plaintiffs indicate that any other threat to their F-1 status exists as a result of the time period in which they lacked active SEVIS records.[1] Moreover,

---

[1] One plaintiff, Rajesh Badam, appears to argue that he presently lacks F-1 status despite the restoration of his SEVIS record because, when his SEVIS record was terminated, he received an explanatory alert stating: "OTHERWISE FAILING TO MAINTAIN STATUS – Individual identified in criminal records check and/or has had their VISA revoked. SEVIS record has been terminated." *Badam*, ECF No. 2-5 at 1; ECF No. 17 at 1. But the government attested that

3

the new policy's conspicuous omission of "criminal records check" as a legitimate reason for terminating SEVIS records suggests that the government has reconsidered its prior approach and will not again terminate plaintiffs' SEVIS records due to their NCIC hits alone.

As their only remaining claim of irreparable harm, plaintiffs point to a line in the new policy stating that SEVIS records may be terminated due to a "U.S. Department of State Visa Revocation (Effective Immediately)." *See Badam*, ECF No. 17 at 1–2; *Ali*, ECF No. 14 at 1. Because some plaintiffs have had their visas revoked by the State Department, they argue that they "remain[] subject to SEVIS and F-1 termination under [the government's] new policy," and thus still face all the consequences that would flow from those events. *Badam*, ECF No. 17 at 2. But irreparable harm must be *imminent* to warrant a TRO or preliminary injunction. *See Chaplaincy of Full Gospel Churches*, 454 F.3d at 297. Here, it is purely hypothetical whether the government might terminate any plaintiff's SEVIS record based on his or her visa revocation; the text of the policy surely does not require it to do so. *See Badam*, ECF No. 16-1 at 1–2. Indeed, it is not clear whether any plaintiff's visa revocation even falls into the category of actions that could lead to SEVIS termination: the policy emphasizes that a visa revocation must be "effective immediately" in order to form the basis for a termination, and no plaintiff has alleged receiving a revocation of that particular kind. *Id.*

In sum, the mere possibility that the government could again terminate plaintiffs' SEVIS records in the future is too speculative to warrant preliminary injunctive relief today, and in any event the Court will require the government to provide it notice if it does so with respect to any

---

Badam's SEVIS record was terminated "[b]ased on [his] criminal history and lack of a valid visa," *Badam*, Watson Decl. ¶ 9, not due to any other asserted failure to maintain status. The "OTHERWISE FAILING TO MAINTAIN STATUS" language in the SEVIS alert is thus best read as a kind of general header that, while inartful, does not amount to a specific declaration about status itself.

4

plaintiff. Plaintiffs also do not seek to enjoin their underlying visa revocations, which in any event might not be subject to challenge here. *See, e.g.*, *Saavedra Bruno v. Albright*, 197 F.3d 1153, 1158 n.2 (D.C. Cir. 1999) (consular officers have "complete discretion over issuance and revocation of visas") (citing 8 U.S.C. §§ 1104(a), 1201(i); 22 C.F.R. § 41.122). The Court must therefore deny plaintiffs' motions.

It is accordingly

**ORDERED** that the Motions for Temporary Restraining Orders, *Ali* and *Ozturk* ECF Nos. 2, and the Motion for Temporary Restraining Order or Preliminary Injunction, *Badam* ECF No. 2, are **DENIED**; and it is further

**ORDERED** that, if the government terminates any plaintiff's SEVIS record, it shall immediately notify the Court.

DATE: May 5, 2025

CARL J. NICHOLS
United States District Judge